# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

AHMED K. ALLOUSH
3666 CARMAN RD, SCHENECTADY
NY 12303

Write the full name of each plaintiff.

____CV____ 20-cv-3757

(Include case number if one has been assigned)

-against-

NYPA
NEW YORK POWER AUTHORITY
123 MAIN ST.
WHITE PLAINS, NY 10601

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?
☒ Yes   ☐ No

ON INFORMATION & BELIEF, NYPA RECEIVES FEDERAL FUNDING

## EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

PLEASE NOTE I ATTACHED THIS DOCUMENT ALONG WITH THE ELECTRONICALLY FILED ONE TO SHOW MY SIGNATURE. THEY ARE THE SAME. THANKS

Rev. 1/24/19

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

**First Name:** AHMED
**Middle Initial:** K.
**Last Name:** ALLOUSH

**Street Address:** 3666 CARMAN RD
**County, City:** SCHENECTADY
**State:** NY
**Zip Code:** 12303

**Telephone Number:** 732-763-1090
**Email Address (if available):** AHMED.ALLOUSH11@GMAIL.COM

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

**Defendant 1:**
**Name:** NEW YORK POWER AUTHORITY
**Address where defendant may be served:** 123 MAIN ST.
**County, City:** WHITE PLAINS
**State:** NY
**Zip Code:** 10601

**Defendant 2:**
**Name:** N/A
**Address where defendant may be served:**
**County, City:**
**State:**
**Zip Code:**

Page 2

Defendant 3: N/A

_____
Name

_____
Address where defendant may be served

_____
County, City            State            Zip Code

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

NEW YORK POWER AUTHORITY
Name
123 MAIN ST.
Address
WHITE PLAINS, NY 10601
County, City            State            Zip Code

## III.   CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☐ national origin: _____

- [ ] **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

- [x] **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: **1952**

- [x] **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance.

    My disability or perceived disability is: • MY CHILD IS DISABLED • MY HEARING LOSS • INJURY CAR ACCIDENT

- [x] **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: • MY CHILD IS DISABLED • MY HEARING LOSS • NECK & SHOULDER INJURY DUE TO CAR ACCIDENT

- [x] **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons - TOOK NYS FMLA - BONDING (PAID) MY EMPLOYER CONSIDERED THIS EXCESSIVE ABSENCE ABSENCE

**B. Other Claims**

In addition to my federal claims listed above, I assert claims under:

- [x] **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

- [x] **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

- [x] Other (may include other relevant federal, state, city, or county law):

    RETALIATION - MY EMPLOYER CONSIDERED MY NYS PAID FMLA - BONDING AS EXCESSIVE ABSENCE - AS A REJECTING/DENIED ME ALL OTHER ABSENCE REGARDLESS OF MY SERIOUS HEALTH CONDITIONS.

Page 4

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☐ did not promote me
- ☒ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

*PLEASE SEE ATTACHED STATEMENT OF FACTS.*

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.) ATTACHED.

When did you file your charge? APRIL 4, 2019

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.) ATTACHED.

What is the date on the Notice? JANUARY 27, 2020

When did you receive the Notice? FEBRUARY 7, 2020

☐ No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☒ direct the defendant to re-employ me.

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☒ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here):

BACK PAY, FRONT PAY, LIQUIDATED DAMAGES, & EMOTIONAL DISTRESS

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

April 29, 2020
**Dated**

[Signature]
**Plaintiff's Signature**

AHMED | K. | ALLOUSH
**First Name** | **Middle Initial** | **Last Name**

3666 CARMAN RD
**Street Address**

SCHENECTADY | NY | 12303
**County, City** | **State** | **Zip Code**

732-763-1090 | AHMED.ALLOUSH11@GMAIL.COM
**Telephone Number** | **Email Address (if available)**

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**Statement of Facts[1]**

**I.      Background:**

1. My name is Ahmed Alloush, 68 years old, and I am the Pro se plaintiff in this case.

2. I was hired by the New York Power Authority in White Plains, New York on January 27, 2014, as Senior Electrical Engineer I, working for the Director of Electrical Engineering Department, Jim Sheldon. I was terminated on February 8, 2019. At the time my title was Senior Electrical Engineer II with an annual salary of $150,000.00.

**II.     Performance Evaluation:**

3. For four (4) years in a raw my performance met the expected results and exceeded. As a result, in 2017, I was promoted from Senior Electrical engineer I to Senior Electrical Engineer II, due to my excellent performance at work.

4. Beginning in late 2015 -early 2016, I began working on a flexible schedule. I would come in at 9:30 and leave at 6:30. I requested a flexible schedule because I have a disabled child to care for him, either late night or early morning. My flexible schedule in no way interfered with the high quality of my work and no one at my employer ever suggested that it did.

5. In January 12, 2017, I had a newly born baby and I needed time off to care for him. I did not know about FMLA leave, and no one at New York Power Authority told me anything about FMLA. There was no posting in the office of FMLA rights. As a result, I used my annual vacation time to care for my baby, in 2017.

6. My vacation days were approved. I took my paid vacation days between approximately, best of my knowledge, April, 2017 and May, 2017. When I

returned to work in 2017, my previous flexible schedule remains the same.

### III.    NYPA- Electrical Engineering Dept. Leadership Change.

7. In or around 2017, Mr. Jim Sheldon, Director of Electrical Engineering Department was promoted to lead another group within NYPA. Miss Johartah Kutty, a Senior Electrical Engineer II, working for a different department within NYPA, was promoted to Director of Electrical Engineering Department replacing Mr. Jim Sheldon.

8. In January 12, 2018, I had another baby. New York Power Authority did not inform us about our employee's rights regarding the paid FMLA leave and NYS Paid Family (Bonding) leave, which was effective on January 1, 2018, in NY State. There were no posting on a general bulletin board. I informed my new boss, Johartah and I added my new born baby to my dependents with the NYPA -HR. Neither my boss nor HR told me about paid FMLA leave or NYS Paid Family (Bonding) leave, which was effective in January 2018.

### IV.    Vice President, Bob, Interference.

9. In late May - early June 2018, I decided to take time off to care for my newborn baby. While evaluating how many vacation and sick days I had, I found out accidentally about my FMLA rights and realized that I was eligible for FMLA leave and NY State paid Family leave, which was effective January 1, 2018.

10. To give enough notice to my employer, during the first week of June 2018 I submitted in writing a leave notice request in accordance with FMLA requirements to the Human Resources department. As explained by HR representative, paid FMLA and NYS Paid Family-Bonding leave can be taken continuous or periodic. In order to keep my assignments in order and keep our customers satisfied and at the same time establish a good bond with my newly born baby, I took my time off periodically, approximately, as follows:

2

    I. First duration- From July 30, 2018 to August 24, 2018.
    II. Second duration- From September 10, 2018 to Nov. 2, 2018.
    III. Third Duration- November 20, 2018 to December 03, 2018.

11. In or around the second week of June, 2018, HR informed me that my Paid FMLA / NYS Paid Family Leave has been approved, as outlined above, to be taken periodically.

12. I immediately informed my boss and vice president that I would be taken FMLA / NYS Paid Family leave, intermittently, as indicated above. My boss said no you cannot take FMLA, or NYS Paid Family leave without our approval. My boss and the engineering vice president refused originally to approve my leave. Despite that I took into consideration my assignments to keep them in good status and gave more than 40 days advanced notice.

13. As a result of their refusal, Johartah and Bob exerted all pressure on me to discourage me from taking my FMLA / NYS Paid Family leave. They told me that they will not let me take my FMLA / NYS Paid Family leave unless I bring an approved letter from HR. I went to HR requesting a letter saying that I am approved for taking FMLA leave. HR told me that HR cannot give me this letter until I start actually taking my leave, which was around July 30, 2018.

14. I told my boss and Bob what HR representative told me. They did not trust me and they demanded from me to bring this letter otherwise they will not approve my leave. I told Bob and Johartah please call HR. They said it is my duty to do so and bring this letter. Back to HR, the same request happened three times. I was running into empty circle. My boss and Bob got angry why can't I understand and get them this letter. I felt very bad but kept it to myself, wondering why my boss and do not trust me and if they do not trust me why can't themselves call HR and find out and why HR does not call them. They made me look foolish or stupid in the front of HR and vice versa. I was taking back and forth the same message.

15. I went downstairs to HR and told Miss Rakeedha Scarlett in HR Department to please call either my boss or vice president Bob and

3

explain to them why you can't you give me this letter at this time. Rakeedha called Vice president Bob, in my presence; my superiors in the engineering department were not pleased with the decision by the Human Resources department to approve my FMLA / NYS Paid Family leave.

16. During this telephone conversation between Rakeedha and Bob,(Bob did not know I am in Rakeedha's office ), I heard Rakeedha in response to some Bob' questions saying to Bob that I must have found out about paid FMLA /NYS Paid Family leave myself, and that the request had been granted because this was my right and met the criteria. The telephone conversation last more than ten minutes.

## V.      Spread The Word – NY State Paid FMLA-Bonding in Effect, as of January, 2018.

17. I told my colleagues about our FMLA rights, and one of them, his name is Carlos, was happy because his wife was due to have a baby soon.

18. Shortly after my FMLA / NYS Paid Family leave was approved and I informed my colleagues about our FMLA rights, information, a notice regarding FMLA rights was posted on the 12th floor of engineering department.

## VI.     Retaliation Process – Phase 1-June, 2018 - November, 2018.

19. After HR confirmed to Engineering Vice President, Bob, during their telephone conversation in my presence as indicated above, he informed my boss to approve my FMLA / NYS Paid Family leave. At this time, my boss supported by her superiors, started treating me badly.

20. Once it was known to people about Paid FMLA /NYS Paid Family leave and Bonding rights I was treated badly by my superiors in the engineering department. Specifically, my boss and vice president took steps to try to set me up for termination or to force me to quit, or to cancel my FMLA / NYS Paid Family leave.

21. My boss asked me to stop come at 9:30 AM and leave at 6:30 PM. No more flexible time for me. I explained to her that my working hours schedule has been noted and approved by my previous boss and HR to care for my disabled child and take him to medical doctor's appointment. I ask her to please let me continue using Flexible time. She denied my request.

22. Her stated reason for ending my flex time arrangement was business reasons, but the timing of the decision (right after getting approved for FMLA / NYS Paid Family leave and telling my colleagues about our rights) would allow a reasonable jury to conclude that this was just a pretext, especially because I had been on flex time for years without a problem.

23. Because I was using flex time with the acknowledgement of HR, I told human resources that my new boss asked to stop using my flex time. HR told I had to get my boss's approval. My boss rejected.

24. I then asked if I could use vacation or sick time to take half days off to take my disabled son to medical appointments.  My boss denied this request as well.

25. In or around the months of August - September, 2018, after I returned from the first FMLA / NYS Paid Family leave; I informed my boss that I have hearing loss problems that made it difficult for me to participate in telephone or video conferences. I also told the EEO of New York Power Authority. I requested that they install a relatively inexpensive hearing device on my phone, but they did not do. The timing of their refusal (right after I returned from FMLA / NYS Paid Family leave) to take this easy step to accommodate my hearing loss would allow a reasonable jury to conclude that the reason was to retaliate against me for taking FMLA / NYS Paid Family leave and telling colleagues about their FMLA rights.

26. She began monitoring me excessively. On two occasions when we were in meetings in or around the fall of 2018, I had to go to the bathroom. She left the meeting and followed me to the bathroom. She said I should not leave the meeting. She also complained to the engineering vice president

5

without telling him I had left to go to the bathroom. The vice president called on me and said it was not appropriate to leave the meeting and did not seem to care when I told him the reason.

27. While I was on paid FMLA / NYS Paid Family leave, my boss requested me to attend telephone conference calls and also called me several times to perform work related activities. On information and belief, the work I was required to perform while I was out went beyond what could be required as a professional courtesy.

28. My boss made my assignments more difficult to do. She almost every day called me asking where I had been and telling me that I had been late when I had actually been engaged in work activities.

29. One engineer told her that I was delaying the construction process and equipment delivery. Without any investigation, she assumed this complaint against me was warranted. She called me and said to me I should stop causing delay, even though I had done no such thing. I denied having caused any delay and told her, in fact, I was expediting delivery of equipment. I asked her to investigate but she never did so.

30. My boss disregarded my good professional judgment without cause.

31. For example there was a difference of technical opinion between me and another engineer regarding an electrical equipment issue. My boss sided with the other engineer and blamed me, saying without justification that my opinion was wrong.

32. I later proved to my boss and other engineers that my technical approach would provide a safe and reliable operation to the power distribution system while the other approach would not. The engineer, who I respect and appreciate his expertise, who had recommended the other approach agreed with me.

33. Nevertheless, for the annual performance of 2018, my boss gave me a poor negative performance review, compared to my previous reviews. Even though I met all the expectations and did more work. Since, I got

6

into car accident and was not able to work, I did not know what did plan to do, demote me fire me or reduce my salary. It seems their plan was to terminate me anyway.

34. I had never had a negative performance review in the past. NYPA has my previous annual reviews for verification. Had I have poor performance I would not have been promoted, 2017.

## VII. Complaint to NYPA- EEO.

35. In or around the months of November - December, 2018, I complained about my boss regarding the above mentioned activities and her biased treatment to me to the EEO of the New York Power Authority. But to my knowledge no investigation was made and no action was taken.

## VIII. Final Steps of Retaliation against me for Taking Paid FMLA / NYS Paid Family Leave Process of Termination and non-fault car accident.

36. Before taking the FMLA / NYS Paid Family leave # 3 on November 20, 2018, on November 15, 2018, I was in a non – fault car accident. I suffered an injury to my neck and shoulder.

37. The next day, I went to the Hospital - ER- The doctor ordered X-rays for me. The Doctor told me that the X-Ray showed no fracture. They gave an arm/ shoulder sling to use. Recommended MRI be done and follow up with a primary Doctor.

38. When I went to work the next day, I informed my boss that I got into car accident at no-fault. I also told her that I will be taking my FMLA / NYS Paid Family – last intermittent- leave from 11-20-2018 to 12-03-2018, as scheduled. Furthermore, I informed her that while I am on FMLA / NYS Paid Family leave, I will be seeing my primary Doctor for further evaluation of my injury.

39. On or around November 22, 2018, I went to my Doctor Chadi Taoum, MD, for Medical evaluation. Dr. Taoum ordered for me two MRIs, in

7

agreement with the Hospital RE recommendations mentioned above. One for my neck (cervical) and one for my right shoulder.

40. I took MRI on November 27, 2018.

41. On or around December 5, 2018, as result of my pain in my neck, I visited my Doctor Chadi Taoum, MD, for my pain and to review my Neck MRI' results. Dr. Taoum reviewed the MRI and issued medical reports, on December 5, 2018, advising me to relax at home for ten (10) days, with the hope my pain will be relieved. On the same day I visited Dr. Montasar Alaasad to evaluate my shoulder MRI. He advised me to rest for ten days for my shoulder problem and to seek medical treatment.

42. On December 5, 2018, I called my boss and emailed her these two reports mentioned in item 41 above, informing her that I can't come to work until December 17, 2018, due to my illness, on the advice of my doctors. My boss told me that I can't take anymore sick leave.

**IX. My Employer Denied Me Taking Vacation, Sick, Floating, Absence Leave, Federal FMLA or Medical Extended Leave Just Because I took FMLA / NYS Paid Family Leave and My Employer Considered This as an Excessive Absence Leave.**

43. On or around December 7, 2018, I had pain and felt tired. I visited Dr. Taoum for examination. Dr. Taoum prescribed for me four types of different medications.

44. On December 17, 2018, I went to work. I experienced numbness in my right hand. The pain medicine I was taking made it hard to concentrate. I told my boss that I feel sick and not able to safely perform my work, in accordance with technical standards and regulations. I asked my boss whether, due to my serious health conditions, I could take my vacation, sick and floating days to recuperate from my car accident, as advised by my Doctors.

45. My boss denied my request and she said that because I took FMLA / NYS Paid Family leave she can't approve taking anymore absence leave.

46. I then requested a three month extension of unpaid FMLA leave as is permitted by NYPA. My boss rejected this request on the spot, saying I had taken FMLA / NYS Paid Family leave which was an excessive absence. She added that I cannot be absent beyond my FMLA / NYS Paid Family leave, anymore, no matter what, due to business decisions, made by upper management. Then I asked my boss, you do not give vacations days, sick days, floating days or unpaid FMLA leave and I am sick and have serious health conditions. What am I supposed to do? She replied this is your decision what to do.
47. I also reminded my boss of my hearing loss and my earlier request for a reasonable accommodation to install a relatively inexpensive hearing device on my phone, and that nothing had happened.

48. On or around December 18, 2018, I visited Dr. Marcello Sammarone, due to the numbness and pain. And also as a third opinion, because previous Doctors suggested that operations on my right shoulder and spine may be needed. Dr. Marcello reviewed my MRI and issued a medical note advising me not to work for two weeks, starting December 19, 2018 and with due re-evaluation on January 2, 2019 and perform physical therapy. I shared this medical note with my employer. My employer rejected this note as unacceptable. On December 19, I stopped working on my doctor's advice.

49. On December 19, 2018, I called my boss informing her I am sick, and I am staying home for two weeks in accordance with my doctor' advice. I emailed NYPA -EEO my Doctor' note recommending not to work for two weeks with due re-evaluation on January 2, 2019. She denied my request saying I could not take any more time off for business reasons.

50. However, based on the timing of her decision to deny my request for leave and the fact that NYPA policy had previously allowed employees to take FMLA leave extensions, a reasonable jury could conclude that her statement that the reason for the denial was a business decision was a pretext and that the real reason was retaliation that I had taken FMLA / NYS Paid Family leave when she asked me not to and had told my colleagues about their FMLA rights.

9

51. I asked my boss, why didn't upper management tell us that if we take paid NYS Paid Family Leave and / or FMLA leave, we could lose the ability to take additional unpaid leave and I asked her if she was telling me that because I took my paid leave she and engineering management were denying me my flexible time to care for my disabled child, denying me ability to take unpaid vacation and sick days, and denying me a FMLA extended medical leave. My boss said yes.

52. I discussed this matter with Rani Pollack, HR director. Rani confirmed, what my boss said, that I could not take additional leave or vacation or sick days, because I had previously taken "excessive" paid leave. I asked if that she is telling me was that if I did not take NYS Paid Family Leave and /or FMLA leave, NYPA would have allowed me to take my vacation, sick days and leave of absence. She replied it would have depended on the business needs.

53. On January 2, 2018, I visited Doctor Marcello Sammarone, MD, for re-evaluation. Dr. Marcello issued a medical report outlining my diagnosis, from December 18 through January 22, advising me to continue physical therapy and to contain my medical treatment, including physical therapy. He recommended that I be allowed to take a leave of absence for four (4) weeks. Please note that my employer rejected Dr. Marcello original note dated December 18, 2018 that indicates I be allowed two weeks sick leave. I requested this sick leave in accordance with my Dr.' advice. My employer denied me this request.

54. On January 11, 2019, after my boss denied me to take vacation and sick days / leave and FMLA extended medical leave, and rejecting multiple medical reports issued by licensed health care, registered MD Doctors, to recuperate from my injury due to a car accident a HR and / or EEO representative suggested that I submit two applications. The person said it was likely one of the requests would be granted. One request for extended unpaid medical leave, paid or unpaid Federal or NYS FMLA leave for personal illness, per NYPA policy. My employer denied me this request indicating that NYS Paid FMLA – Bonding leave is excessive absence leave. The second request is for unpaid personal leave, per NYPA policy.  My

10

employer denied me this request indicating business reasons. Both applications are for requesting leave for three months (starting January 22, 2019 and ending on April 22, 2019) due to a car accident happened on Nov. 15, 2018, causing me pain and suffering (continuously) in the neck , shoulder and right / numbness, affecting my ability to perform my job, mentally and physically. I am undergoing medical treatment under the supervision of my Dr.'s.  My car insurance is covering my medical treatment and lost wages.

55. I submitted these two requests on January 11, 2019.

56. On January 21, I visited my Doctor Chadi Taoum for re- evaluation. He issued a medical report, outlining my diagnosis, recommending receiving medical treatment, including taking pain management pills, as described, and to contain physical therapy. Dr. Taoum recommended four (4) weeks leave of absence, starting January 22, 2019 and ends Feb. 21, 2019.

57. My employer found fault in the diagnosis and denied this request and added additional details are required.

58. On Feb. 1, 2019, I sent the NYPA EEO Director additional clarifications from DR. Taoum confirming the diagnosis in his previous report date January 21, 2019.  My employer rejected these clarifications as well.

59. As my employer denied all my medical reports to allow me to care for myself and recuperate from my car injury, I felt stressed and pain.  On Feb. 2, I visited Dr. Mo Hmouda, MD, who issued a medical report outlining my diagnosis and prescribed new medicine prescription. He recommended I be allowed to take a leave of absence for three months, using the new prescriptions and physical therapy. I sent this report to my employer. My employer denied this request as well.

60. All and all, from Nov. 15, 2018 to Feb. 2, 2019, I made eight visits to medical professionals.  I attended 15 physical therapy sessions.  I have taken seven different types of pain management medication in an effort to get better and be able to work.

61. In addition, after my employer terminated my work, Feb. 8, 2019 to end of November 2019, I made thirteen (13) visits to doctors, and more than sixty (60) physical therapy sessions.

62. On Feb. 6, 2019, my employer informed me the two leave requests have been denied, even though I had submitted multiple Doctor's notes recommending that I should be undertaking medical treatments and should be allowed to take time off:

    I. Medical report dated December 5, 2018.Dr Chadi Taoum, MD.
    II. Medical report dated the same December 5, 2018. Dr. Montasar Alaasaad, MD.
    III. Medical notes dated December 18, 2018. Dr. Marcello Sammarone, MD.
    IV. Medical report dated January 8, 2019, Dr. Marcello sammarone, MD.
    V. Medical report dated January 21, 2019. Dr. Chadi Taoum, MD.
    VI. Medical report dated Feb.2, 2019, Dr. Mo. Hmouda, MD.
    VII. Medical Notes Clarifying question regarding Dr. Taoum' medical report mentioned above, dated Jan. 21, 2019.
    VIII. Unpaid leave of absence request for personal injury.
    IX. Federal unpaid Federal FMLA Leave for personal injury.
     Please note all above were denied because of business decision and for taking NYS paid Family Bonding (newly born baby) Leave

63. In addition, they had previously denied me the use of my vacation and sick days and extended FMLA leave.

64. I was terminated on Feb. 8, 2019. The stated reason was that I had abandoned my post, since I had not been at work since Jan. 22, 2019.

65. I deny that I abandoned my post. I was not at work on the advice of my doctor, which I had shared with my employer all medical reports, ahead of time. I informed my employer in writing that I did not abandon my job and I need 4 weeks to recuperate from my non –fault car accident.

**X.Summary:**

12

Case 7:20-cv-03757-CS   Document 1   Filed 05/12/20   Page 20 of 20

66. My employer interfered in the process of applying and approving for my FMLA / NYS Paid Family leave.

67. My employer retaliated against me for taking FMLA / NYS Paid Family leave and telling colleagues about their FMLA rights in the following ways: telling me I could no longer have a flexible schedule, which allowed me to care for my disabled child, even though I had been allowed to have a flexible schedule with no negative impact on my work for several years; refusing to let me take off half days to take my disabled child to the doctor; failing to give me a device to help me hear better on telephone calls; monitoring me excessively; ignoring my sound professional judgment without good cause; falsely accusing me of delaying projects; and giving me an unwarranted negative performance review.

68. The stated reason for denying my requests for a flexible schedule to care for my disabled son or half days off to take him to medical appointments was that they could not be accommodated for business reasons, but this rationale was a pretext, as is evident from the fact that I had previously been allowed a flexible schedule for couple of years. They took the flexible schedule away and deprived my disabled child of my care to punish me for taking FMLA / NYS Paid Family leave and telling colleagues about FMLA rights.

69. I had excellent performance met all expectations of the internal and external customers. My boss gave me undeserved performance ratings, destroying my 30 years of professionalism, to further retaliate against me for taking FMLA / NYS Paid Family leave and telling colleagues about FMLA rights.

70. After I was in a car accident, my employer denied me all requests for taking vacation, floating, and sick days to recuperate even though I submitted notes from doctors explaining that I should be allowed to take time off.

71. My employer found fault with all of the medical notes that I submitted.

13