UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMED K. ALLOUSH<br>      Plaintiff,<br><br>-against-<br><br>NEW YORK POWER AUTHORITY,<br>      Defendant. | ECF CASE: **7:20-cv-03757-CS**<br><br>**AMENDED COMPLAINT**<br><br>*Jury Trial Demanded* |

Plaintiff AHMED K. ALLOUSH, ("Plaintiff"), by and through his attorneys, Wagner Berkow & Brandt, LLP, as and for his complaint, respectfully alleges and sets forth as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq*.; the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 701 to 718, the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, as amended; and Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*., seeking damages to redress the injuries suffered as a result of discrimination and retaliation, on the basis of his disability, and as a result of taking leave under FMLA, by his employer, Defendant NEW YORK POWER AUTHORITY ("NYPA" or "Defendant").

2. Plaintiff has suffered a failure to accommodate his disability, disparate treatment, adverse employment action and retaliation at the hands of NYPA, including, but not limited to, unlawful termination after five successful years with NYPA.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

4. Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to Plaintiff's allegations occurred in this district, Defendant's office is located in this district, and Defendant conducts business in this district.

5. Plaintiff filed a timely administrative grievance against NYPA before the United States Equal Employment Opportunity Commission, which issued a Notice of Right to Sue to Plaintiff dated January 27, 2020, which was received by Plaintiff on February 7, 2020.

6. Plaintiff timely filed a *pro se* Complaint, in hard copy form, with the Clerk of the Court.

## THE PARTIES

7. Plaintiff resides in Schenectady County, New York.

8. NYPA is a public-benefit corporation formed under the laws of the state of New York.

9. NYPA operates an office in White Plains, New York, where Plaintiff worked, which is located within this district.

10. NYPA employed more than 15 individuals within the last 20 weeks prior to the filing of this action.

## FACTUAL ALLEGATIONS

11. Plaintiff was employed by NYPA from January 2014 through February 8, 2019 as an electrical engineer. He held the title of Senior Electrical Engineer I until 2017, when he was promoted to Senior Electrical Engineer II.

12. At all times relevant herein, NYPA's employee, Robert Knowlton ("Mr. Knowlton"), Vice President of Engineering, supervised Plaintiff.

13. At all times relevant herein, NYPA's employee, Joharath Kutty ("Ms. Kutty"), Director of Electrical Engineering, acted as Plaintiff's direct supervisor.

14. At all times relevant herein, NYPA's employee, Nancy Harvey ("Ms. Harvey"), served as Director of the Office of Civil Rights and Inclusion, handling certain human resources matters on behalf of NYPA.

15. At all times relevant herein, NYPA's employee, Rakita Scarlett ("Ms. Scarlett"), served as a representative of NYPA's human resources department.

16. In early June 2018, Plaintiff submitted a request to Ms. Scarlett to apply for FMLA leave to bond with his newborn child.

17. He requested periodic leave to minimize disruption with his work projects, and his periodic leave request was approved by NYPA.

18. Upon receiving notification that his FMLA leave had been approved, Plaintiff informed his direct supervisor, Ms. Kutty, and the Vice President of Engineering, Mr. Knowlton.

19. Despite NYPA's approval, Ms. Kutty and Mr. Knowlton advised Plaintiff that his FMLA leave was not approved, and that he would not receive approval until he produced a letter from NYPA human resources evidencing it.

20. Plaintiff requested this letter from Ms. Scarlett.

21. Ms. Scarlett advised Plaintiff that he was ineligible to receive the FMLA approval letter until his leave was to commence in July 2018.

22. Plaintiff again requested approval from Ms. Kutty, who reiterated that Plaintiff was required to provide written approval from NYPA's human resources department before she would agree to it.

23. Finally, after Plaintiff requested that Ms. Scarlett and his supervisors speak directly to clarify the approved FMLA leave, Ms. Scarlett called Mr. Knowlton in Plaintiff's presence to confirm his approved FMLA leave.

24. Following Plaintiff's return from his first portion of FMLA leave, Ms. Kutty micro-managed Plaintiff and subjected him to close monitoring and unwarranted criticism.

25. On one occasion, Ms. Kutty left a staff meeting to follow Plaintiff to the restroom, advising Plaintiff that he is not permitted to leave meetings for any reason. She reported to Mr. Knowlton that Plaintiff had left the meeting without informing him that he had left for the restroom.

26. In June 2018, Plaintiff was diagnosed with significant hearing loss, which was causing him to have difficulties conducting business on the telephone.

27. In late fall of 2018, on separate occasions, Plaintiff requested from Mr. Knowlton, Ms. Kutty, and Ms. Harvey, a device to amplify the sound on Plaintiff's work phoneline to accommodate his hearing loss.

28. While Plaintiff's supervisors and Ms. Harvey acknowledged his repeated requests for a hearing device for his phone, no device was ever provided by NYPA to Plaintiff.

29. In approximately late 2018, despite successfully meeting his performance metrics and expectations, and continually demonstrating his technical expertise, for the first time at NYPA, Plaintiff received a poor annual performance review.

30. On November 15, 2018, Plaintiff was involved in a car accident which resulted in bodily injuries.

31. Plaintiff provided notice of the bodily injuries resulting from his car accident to his immediate supervisor, Ms. Kutty, on the following business day.

32. Shortly after his car accident, Plaintiff took his final period of FMLA leave to bond with his newborn child.

33. When Plaintiff returned to work in December 2018, he reported to Ms. Kutty that he was experiencing issues in performing his position as a result of the injuries from his car accident, and that he would need time off from work to recover.

34. In addition, Plaintiff advised Ms. Kutty that he was experiencing dizziness, fatigue, and a loss of balance from the medication he was taking to treat his injuries.

35. At the relevant time, NYPA had an extended leave policy which states that "[a]n employee who has exhausted their 12 weeks of FMLA and requires additional medical leave for their own personal illness, can request a reasonable accommodation for an extended medical leave for up to 6 months."

36. NYPA's extended leave policy does not contemplate any employer hardship exceptions that would diminish or deny eligibility for leave.

37. Ms. Kutty denied Plaintiff's request for leave to recuperate from the injuries he sustained in his car accident on the grounds that he had taken "excessive leave" as a result of using all of his FMLA-allotted leave during the prior twelve months, when he had taken leave over the course of three periods to bond with his newborn child.

38. On January 11, 2019, upon the recommendation of Ms. Scarlett, Plaintiff submitted two NYPA application forms, a "Reasonable Accommodation of a Disability" form and a "Leave of Absence Request Form," requesting an approximate three-month leave of absence due to the injuries from his car accident, which submission included medical records evidencing, *inter alia*, the injuries he sustained.

39. Plaintiff never received a response from NYPA to his submission of the temporary leave and reasonable accommodation form related to the injuries sustained in the car accident.

40. On or about February 8, 2019, NYPA terminated Plaintiff's employment with NYPA by letter dated February 6, 2019.

41. By the middle of February 2019, Plaintiff felt well enough to return to work.

42. In the termination letter, Ms. Harvey accused Plaintiff of "job abandonment," wrongly accusing Plaintiff of being "on an unauthorized leave since January 21, 2019," despite his written request to take leave until the specified date of April 22, 2019. She erroneously noted that "[i]ndefinite leaves of absence from work are not reasonable."

## AS AND FOR A FIRST CAUSE OF ACTION
**(Violation of the Americans with Disab. Act of 1990, 42 USC § 12112 *et seq*, as amended)**

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. Discrimination under the Americans with Disabilities Act of 1990 and as amended (the "ADA") includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(a).

45. Plaintiff's hearing loss is a disability within the meaning of the ADA

46. During the period November 15, 2018 through mid-February 2019, Plaintiff was also disabled, within the meaning of the ADA, as a result of the bodily injuries he sustained in a car accident.

47. Defendant failed to provide Plaintiff with a reasonable accommodation in response to Plaintiff's requests for a sound amplification device or similar accommodation to address his hearing loss

48. Defendant refused to provide Plaintiff with his temporary, finite leave of absence that he requested to recuperate from his injuries sustained in a car accident, and failed to propose alternative accommodations in lieu of approving the requested leave of absence.

49. Defendant failed and/or refused to engage in any interactive process with Plaintiff to determine whether a reasonable disability accommodation could be afforded to Plaintiff.

50. The Defendant's aforementioned refusals, denials, omissions and other acts, so as to afford Plaintiff disability accommodations are in violation of 42 U.S.C § 12112.

51. The Defendant's aforementioned refusals and employment termination constitute disparate treatment in that NYPA terminated Plaintiff "because of" Plaintiff's disabilities in violation of the ADA.

52. The Plaintiff seeks an award for damages for back pay, front pay, emotional distress, pain and suffering, punitive damages, and an award of reasonable attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*)**

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. In 2018, the Plaintiff exercised his rights to take leave pursuant to 29 U.S.C. §§ 2612(a)(1)(A) to care for his newborn child.

55. The FMLA proscribes retaliation by an employer against an employee for exercising FMLA rights.

56. Plaintiff suffered adverse employment action and retaliation when Defendant terminated Plaintiff's employment on grounds of and following his FMLA leave, claiming that Plaintiff has exhausted his FMLA rights when he sought accommodation in the form of further and separate leave due to injuries from his car accident.

57. Defendant retaliated against Plaintiff and violated his rights under the FMLA and other regulations, including but not limited to 29 C.F.R. § 825.220(c), when it refused to provide a reasonable accommodation for Plaintiff's injuries on grounds that he had already used all allotted FMLA leave to bond with his newborn child, and terminated Plaintiff's employment as a result of his exercise of the right to FMLA leave.

58. Plaintiff seeks an award for damages for back pay, front pay, emotional distress, pain and suffering, punitive damages, and an award of reasonable attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
(Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*)

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. Pursuant to the Rehabilitation Act of 1973, "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

61. As set forth above, Plaintiff has a disability.

62. Plaintiff was qualified to perform his job.

63. Plaintiff was terminated solely because of his disability.

64. Upon information and belief, Defendant receives federal funds.

65. Plaintiff seeks an award for damages for back pay, front pay, emotional distress, pain and suffering, punitive damages, and an award of reasonable attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.)**

66. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. Pursuant to the New York State Human Rights Law (the "HRL"), it is an unlawful discriminatory practice for an employer to discriminate against or terminate an employee based on a disability.

68. Discrimination under the HRL includes failing to reasonably accommodate a disabled individual and for taking adverse employment action against an individual because of a disability.

69. Defendant refused to provide Plaintiff with a reasonable accommodation in response to Plaintiff's requests for a sound amplification device or similar accommodation.

70. Defendant also refused to reasonably accommodate Plaintiff with the requested temporary leave of absence to recuperate from injuries sustained in a car accident, and Defendant failed to propose alternative accommodations in lieu of approving the requested leave of absence.

71. Defendant failed and/or refused to engage in any interactive process with Plaintiff to determine whether a reasonable disability accommodation could be afforded to Plaintiff.

72. Defendant's aforementioned refusals to address, respond to and/or comply with the requested disability accommodations constitute: (i) a failure to reasonably accommodate Plaintiff, who was disabled at the time; and (ii) disparate treatment and discrimination "because of" Plaintiff's disabilities in violation of the HRL.

73. Plaintiff seeks an award for damages for back pay, front pay, emotional distress, pain and suffering, punitive damages, and an award of reasonable attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter a judgment and order:

A. On the First, Second, Third, and/or Fourth Causes of Action, declaring that the subject practices of Defendant constitute violations of the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Family and Medical Leave Act of 1993, and the New York State Human Rights Law;

B. On the First, Second, Third, and/or Fourth Causes of Action awarding Plaintiff compensatory damages, consequential damages, back pay, front pay, mental anguish, humiliation damages, pain and suffering damages, in a collective amount of no less than $800,000.00, punitive damages in an amount no less than $250,000.00, as well as an award of reasonable attorneys' fees, expenses, and costs incurred in this proceeding and to investigate the facts and claims in this proceeding; and

C. Awarding such other and further relief as this Court may deem appropriate and as may be required in the interests of justice.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

Dated: New York, New York
September 25, 2020

          Wagner Berkow & Brandt, LLP

          By: _____*Ian Brandt*_____
                Ian J. Brandt, Esq.  BR 8511
                462 7th Avenue – 6th Floor
                New York, New York 10118
                (646) 791-2086